UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL SCOTT                                    CIVIL ACTION

VERSUS                                           NO. 06-2129

LOUISIANA DEPARTMENT                             SECTION "I" (2)
OF PUBLIC SAFETY & CORRECTIONS ET AL.


## REPORT AND RECOMMENDATION
## AND ORDER ON MOTIONS

Plaintiff, Michael Scott, is a convicted prisoner currently incarcerated in the

Washington Correctional Institute ("WCI") in Angie, Louisiana.  He filed this complaint

pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Louisiana

Department of Safety & Corrections ("DOC"), DOC Secretary Richard Stalder, Keith

Bickham (identified by plaintiff during his testimony as Deputy Warden and Chief of

Security), Linda Ramsey, Warden Rogers, Lynn McCloud, Donnie Seal, Ronnie Seal,

Johnny Johnson, E. Jackson and "Mr. Mitchell."[1]  Scott alleges that he was subjected to

improper disciplinary proceedings while incarcerated in WCI, which resulted in the loss

of certain good time credits, in violation of his constitutional rights.  He also alleges that

a particular DOC rule applicable at WCI violates the Louisiana Constitution.  He seeks

---

[1]Plaintiff testified that he later discovered that this defendant is Captain Lester Mitchell, who was
never served with this complaint.

general damages, punitive damages and injunctive relief.  Record Doc. No. 1 (Complaint at ¶ V).

On July 25, 2006, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and David A. Young, Assistant Louisiana Attorney General, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is incarcerated in WCI based on a conviction for possession of cocaine in 2004, for which he is serving a sentence of five years.  In his testimony, Scott confirmed that he asserts two claims in this case:  (1)  DOC Rule 30(u) is unconstitutional under Louisiana law.   (2) He was subjected to an improper disciplinary action that resulted in the loss of good time credits.

As to his first claim that Rule 30(u) is unconstitutional, plaintiff, apparently reading from the DOC inmate handbook, testified that Rule 30(u) is classified under "General Prohibitive Behaviors" as a Schedule B offense in the handbook.  The rule prohibits behavior "which may impair or threaten the security or stability of the unit, or well-being of an employee, visitor, guest, inmate or their families," including "starting or attempting to start a fire and/or attempting to heat substances utilizing electrical/mechanical devices or any other means."  Scott stated that this provision is

2

unconstitutional because Louisiana Constitution article 1, section 23 "states in pertinent part [that] . . . no bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."

Plaintiff explained that he had signed a binding contract with the DOC in which he "would relinquish my incentive wages in exchange for good time, so basically, I'm paying for the good time that was taken from me."  He further stated that Rule 30(u) is unconstitutional because "it extends the time and it infringes upon the contract, it violates the contract . . . it breaches the contract between myself and the State of Louisiana. . . . The contract in itself stated that I would relinquish my incentive wages in exchange for good time.  When this good time is taken, this means that the contract in itself is breached, and article 1, subsection 23 of the Louisiana Constitution states in pertinent part, 'no bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted.'  30(u) would fall up underneath a law that is transcribed [sic] up on these same standards."

As to his second claim that he was subjected to an improper disciplinary action that resulted in the loss of good time, Scott testified that he arrived at WCI on October 10, 2005.  He stated that he was charged with "igniting a fire on the compound" on January 24, 2006, a generally prohibited behavior under Rule 30(u), but that no physical evidence was introduced to support the disciplinary report.  He stated that, on

that same day, he received a copy of the disciplinary report, which was written by the reporting officer, defendant Johnny Johnson. Plaintiff testified that, on January 25, 2006, he was brought before a disciplinary board consisting of two persons, defendant Lynn McCloud, who was the disciplinary board chairman, and another man whom plaintiff could identify only as the safety supervisor. He denied that the other person was any of the named defendants. Plaintiff said that this person prepared the investigative report that was issued on February 1, 2006. He said that "inmate counsel registered at WCI" was present at the hearing to assist him. He stated that Johnny Johnson, who prepared the disciplinary report, and the supervising officer, Ronnie Seal, were not at the hearing.

Scott testified that he spoke at the disciplinary hearing, pled not guilty and requested production of any tangible evidence of the substance that had been burned, but was told that no physical evidence existed. He said that he made a statement to the board that he should be acquitted because there was no evidence of his guilt. Plaintiff stated that he "requested that the write-up be dismissed because I stayed on investigation on this particularized write-up from January 25 until February 1st of 2006." He explained that "the write-up is normally deferred per investigation and during the course of the investigation, they will check on the facts surrounding it and the allegations of the writeup in itself, and when it came back February 1, 2006, I was found guilty, . . . based on the investigation with no physical evidence" conducted by the security supervisor.

4

Plaintiff said that inmate counsel Gibson spoke on his behalf and assisted him at the initial hearing on January 25, 2006, and that inmate counsel Jenkins appeared with him at the second session on February 1, 2006, after the investigative report came back. He stated that the disciplinary board on February 1, 2006 again consisted of McCloud and the safety supervisor.

Scott testified that he spoke at the second hearing on February 1, 2006 and that inmate counsel Jenkins also spoke on his behalf.  Plaintiff stated that, although he was given a copy of the disciplinary write-up, he never received a copy of the investigative report.  He testified that he again requested production of evidence at the second hearing and he also requested an appeal, which he filed on February 8, 2006.  He said that he cannot remember everything that inmate counsel Jenkins said on his behalf at the hearing, but he remembers that Jenkins asked that the charge be dismissed based upon lack of evidence.

Plaintiff reiterated that he was found guilty on February 1, 2006 of setting the fire and was sentenced to "transfer to working cell block Sun Unit and loss of 90 days good time."  He explained that the working cell block is a seven-by ten-foot cell surrounded by concrete cinder blocks and equipped with a stainless steel toilet fixture.  He testified that he spent 90 days in the working cell block.  He stated that, as part of his sentence, he also lost privileges, including "the remainder of my cell confinement from an initial

write-up, which was 12 weeks," which restricted him from leaving the dormitory for recreation.  Scott said he left the working cell block only for showers, work and "possibly call outs."  He said his work day began at 7:00 a.m. and continued until around 9:30 a.m. and began again at noon and continued until 3:00 p.m.  He stated that he did not lose any other privileges as a result of being in the working cell block as a disciplinary matter, but that he also lost 90 days of good time.

Scott testified that he filed an appeal to the warden on February 8, 2006, based on an excessive sentence.  He said that, if the appeal was denied, it would be reviewed by the Secretary of the DOC.  Plaintiff stated that his appeal was denied by the warden, but he could not remember the date of the denial.  He said the ruling on an appeal is made without a hearing, based on the record of the original disciplinary board.

Plaintiff stated that he also took his appeal to the Secretary of the DOC.  He said that the argument presented in his appeal was that he was convicted without physical evidence and the "sentence is excessive whereas inmate only had one prior rule violation in the last 90 days" and he "is not a threat to the institution or a problem inmate who steadily gets write-ups."  He said that he argued in his appeal that the only evidence presented to the board was the "officer's statement on the writeup, there was no evidence that a fire extinguisher was used at all" and that he "denied the contents of the report, alleging that the report was fabricated and orchestrated by Lt. [Ronnie] Seal."  He stated

6

that this was the second "encounter" he has had with Lt. Seal since he arrived at WCI on October 10, 2005.

Plaintiff testified that "such rule violations should have some physical evidence, the hearing was not fair and impartial, and the relief desired was that [he] be remanded back to court for dismissal of rule violation and/or rehearing for production of evidence to support officer's statement." He further testified that Rule 30 provides for "specific things that [the disciplinary board] can put down such as . . . reasons for disposition, which consists of numerous reasons for the decision of any disciplinary board. . . . Officer's version is determined to be more credible than inmate's. Only defense is denying the contents of the report. The investigative officer's testimony was deemed more truthful and accurate than an inmate's." Plaintiff stated that "a majority of the time when you go before a disciplinary board, their reason for making their rulings of guilt is that the officer's version is deemed to be more credible than an inmate's. This means that if in the event a disciplinary action is falsified and submitted into record, you're just as guilty because, basically, your word has no merit."

Before our telephone conference, Scott had filed motions for protective custody and removal from WCI. Record Doc. Nos. 40, 46 (deferred portion). Defendants filed an opposition memorandum. Record Doc. No. 48. Although his original complaint asserted only the two claims described in detail above, Scott has submitted various

papers to the court since his original filing, alleging that defendants have retaliated against him for filing this lawsuit through verbal threats and the prosecution of additional disciplinary charges.  During his testimony, plaintiff expounded upon these allegations. Because they are not part of his complaint, I instructed him to file a new complaint if he has new claims, and I have not considered these claims in this lawsuit.

In addition, defendants filed a motion to dismiss, Record Doc. No. 37, in which they argued that plaintiff's complaint should be dismissed as frivolous under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997(e)(c)(1) or under Rule 12(b)(1).  Plaintiff was ordered to file a response no later than August 21, 2006, and he has done so.  Record Doc. Nos. 47, 49.  Plaintiff also filed a motion for summary judgment to which defendants have filed an opposition.  Record Doc. Nos. 57 and 61.

## ANALYSIS OF SECTION 1983 COMPLAINT

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

8

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The

Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[2]

## II.   DISCIPLINARY CHARGES

Plaintiff's claims concerning allegedly improper disciplinary procedures and false disciplinary charges will be addressed together because they are subject to related legal standards.  Specifically, these include Scott's claims that false disciplinary charges were brought against him and that he was punished as a result of procedures that violated his due process rights.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983).  In <u>Sandin</u>, the Supreme Court recognized that although the States

---

[2]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted).  Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997).  The Madison court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Id. at 768; accord Dixon v. Hastings, No. 04-40346, 117 Fed. Appx. 371, 372 (5th Cir. Jan. 4, 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000).  The court further held that such restrictions are "penalties, which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." Madison, 104 F.3d at 768.  Examples of disciplinary hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted

12

administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction.  Sandin, 515 U.S. at 484.

In addition, the Supreme Court intimated in Sandin that prison disciplinary proceedings resulting in the loss of good time credit may result in an "atypical and significant hardship" implicating due process concerns because it affects the duration of the inmate's imprisonment.  Id. at 479-84.  Without specifically addressing Sandin, the Fifth Circuit held in a case involving the Texas good time statute that prison disciplinary action that results in an inmate's loss of good time credits must be accompanied by certain procedural safeguards of the type described in the pre-Sandin Supreme Court decision in Wolff.  Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997).  Similarly, in Madison, the Fifth Circuit stated that a prisoner's "loss of 30 days good time credit calls for a more careful analysis" of applicable due process principles.  Madison, 104 F.3d at 768.

In Wolff, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings.  Wolff, 418 U.S. at 556.  Nevertheless, the Wolff Court held that prison officials must afford the prisoner some due process in

disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf.  Id.

In the instant case, Scott's testimony and his written submissions establish that  he received various kinds of punishment for alleged disciplinary violations, including loss of good time credits, loss of outdoor recreation and confinement to a working cell block. Except for his loss of good time credits, none of these punishments constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process were required.  Sandin, 515 U.S. at 484; see Madison, 104 F.3d at 768 ("commissary and cell restrictions as punishment are in fact merely changes in the conditions of his confinement and do not implicate due process concerns"); accord Dixon, 117 Fed. Appx. at 372; Malchi, 211 F.3d at 957-58.  No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

Only Scott's allegation that he was sentenced to a loss of 90 days of good time credit after disciplinary proceedings in which he was falsely charged with setting a fire raises due process concerns.  Scott's testimony establishes, however, that even as to this claim, he received adequate due process under the Wolff standards. As noted above, Wolff does not require that prison disciplinary proceedings include "the full panoply of rights" provided in criminal prosecutions.

Plaintiff testified that he received written charges against him in advance of an initial hearing on January 25, 2006, which was conducted by a two-person board. He was provided with inmate counsel, who assisted him at the first and second hearings. He was given an opportunity to present some evidence in his own behalf in the form of his own statement. He testified that he made a statement on his own behalf at both hearings, as did inmate counsel. He was also provided with an appeal process, which he employed. Under these circumstances, Scott received adequate due process in connection with the disciplinary charges against him, even to the extent that it resulted in his loss of good time credits. He therefore fails to state a due process claim for which he would be entitled to relief under Section 1983.

In addition, the case law is clear that an allegation that false disciplinary charges were asserted against an inmate by a prison official fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984); Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). In the instant case, Scott does not dispute that he had disciplinary hearings, and his testimony establishes that the hearings were adequate under Wolff. Thus, Scott fails to state a claim that his due process rights were violated in his disciplinary proceedings.

III.      <u>APPLICATION OF *HECK* TO SECTION 1983 CLAIMS</u>

Scott claims that DOC Inmate Rule 30(u) is unconstitutional under the Louisiana Constitution because it prohibits behavior "which may impair or threaten the security or stability of the unit, or well-being of an employee, visitor, guest, inmate or their families," including "starting or attempting to start a fire," which is the conduct for which plaintiff was charged and convicted in the disciplinary hearing.  Part of his punishment was the loss of 90 days of good time credit.  Scott argues that Rule 30(u) is unconstitutional because article 1, section 23 of the Louisiana Constitution states that "no bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."

Plaintiff explained that he had signed a contract with the DOC in which he "would relinquish my incentive wages in exchange for good time, so basically, I'm paying for the good time that was taken from me." He further stated that Rule 30(u) is unconstitutional because "<u>it extends the time</u> and it infringes upon the contract, it violates the contract . . . between myself and the State of Louisiana. . . .  The contract in itself stated that I would relinquish my incentive wages in exchange for good time.  When this good time is taken, this means that the contract in itself is breached, and article 1, subsection 23 of the Louisiana Constitution states in pertinent part, 'no bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted.'"  (Emphasis added).

Although Section 1983 does not grant this court jurisdiction to review plaintiff's claim under the Louisiana Constitution, the court will liberally construe his complaint as making the same claim under the Ex Post Facto Clause of the United States Constitution.  That clause simply provides:  "No Bill of Attainder or ex post facto Law shall be passed."  U.S. Const. Art. I, § 9.

However, Scott's claim that Rule 30(u) is unconstitutional and that his good time credits should be restored is not cognizable in a Section 1983 action and must be dismissed pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

In <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

17

> dismissed unless the plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.

Id. at 486-87 (footnote omitted).  Although Heck concerned a civil action for monetary

damages, the United States Court of Appeals for the Fifth Circuit has also applied Heck

in cases in which the plaintiff seeks injunctive relief.  Clarke v. Stalder, 154 F.3d 386,

189 (5th Cir. 1998) (citing Edwards v. Balisok, 520 U.S. 641, 645-46 (1997)).

The Fifth Circuit in Clarke made it clear that Heck applies to claims for restoration

of good time credits.

> A prisoner cannot, in a § 1983 action, challenge the fact or duration of his
> confinement or recover good-time credits lost in a prison disciplinary
> proceeding. . . .  A "conviction," for purposes of Heck, includes a ruling in
> a prison disciplinary proceeding that results in a change to the prisoner's
> sentence, including the loss of good-time credits.

Id. (citing Edwards, 520 U.S. at 645-46; Heck, 512 U.S. at 486-87; Preiser v. Rodriguez,

411 U.S. 475, 487 (1973)).

Plaintiff's claims are clearly connected to the validity of his conviction and present

confinement.  Heck, 512 U.S. at 479; Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1997);

Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir. 1994).  He alleges that Rule 30(u) violates

the prohibition against ex post facto laws, that his punishment of loss of 90 days of good

time credit should be revoked and that his good time credit should be restored.

"Conviction based on an unconstitutional rule is the sort of 'obvious defect' that, when

established, results in nullification of the conviction."  <u>Clarke</u>, 154 F.3d at 190.  Thus,

"a favorable ruling . . . would 'necessarily imply' the invalidity of [plaintiff's] loss of

good-time credits."  <u>Id.</u> at 189 (citing <u>Serio v. Members of La. State Bd. of Pardons</u>, 821

F.2d 1112, 1119 (5th Cir. 1987)).  "'Such claims must . . . be pursued initially through

habeas corpus.'"  <u>Id.</u> at 190 (quoting <u>Serio</u>, 821 F.2d at 1119.

        The conviction for setting a fire that Scott challenges in this case has <u>not</u> been set

aside in any of the ways described in <u>Heck</u>.  Thus, any claims for relief that plaintiff

asserts, attacking the manner of his conviction and continued confinement related to that

conviction, are premature and must be dismissed.  As the Fifth Circuit has noted, the

dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again

until the <u>Heck</u> conditions are met.  <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir.

1996).

IV.    <u>HABEAS CORPUS CLAIMS</u>

        As noted above, Scott's complaint in part challenges the very fact and duration of

his confinement in connection with his disciplinary conviction.  Although his suit is

styled as a civil rights action under 42 U.S.C. § 1983 and filed on a form normally

reserved for Section 1983 complaints, he clearly challenges the validity of his conviction

and seeks restoration of good time credits towards his eventual release.  This Section

1983 complaint is not the proper action in which to assert these habeas corpus claims.

A prisoner who challenges the very fact or duration of his physical confinement and who seeks judgment that would entitle him to release must pursue habeas corpus relief rather than civil rights relief under Section 1983.  Preiser, 411 U.S. at 500; Clarke, 154 F.3d at 190; Caldwell v. Line, 679 F.2d 494, 496 (5th Cir. 1982).  Thus, although Scott filed his complaint on a form reserved for Section 1983 complaints, his claims invoke habeas corpus type relief because he challenges the fact of his conviction and confinement.  Clarke, 154 F.3d at 190; Hernandez v. Spencer, 780 F.2d 504, 504 (5th Cir. 1986).

A fundamental prerequisite to federal habeas relief is the exhaustion of all claims in state court before requesting federal collateral relief.  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); Nobles v. Johnson, 127 F.3d 409, 419 (5th Cir. 1997).  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20)).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement. . . .

20

This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Picard, 404 U.S. at 275-78; Nobles, 127 F.3d at 420).  A court may notice sua sponte the lack of exhaustion.  McGee v. Estelle, 722 F.2d 1206, 1214 (5th Cir. 1984).

In the present case, Scott does not allege and there is no proof that he has exhausted his state court remedies in connection with his disciplinary conviction.  On the contrary, on the first page of his complaint, Scott indicates that he has not begun any other civil lawsuits in state or federal court dealing with the same facts involved in this action.  Record Doc. No. 1, at p.1, ¶ I(A).  Accordingly, plaintiff's claims seeking habeas corpus relief must be dismissed without prejudice to allow him to pursue state court remedies concerning his disciplinary conviction through the Louisiana Supreme Court, before returning to this court with a properly filed habeas corpus petition.

V.     STATE LAW CLAIMS

Any claims asserted by plaintiff that would constitute a breach of contract under state law or a violation of the Louisiana Constitution are not within this court's supplemental subject matter jurisdiction in the absence of a cognizable federal claim.  If my recommendation to dismiss plaintiff's Section 1983 claims is accepted by the presiding district judge, plaintiff will have no federal claims remaining in this action, and

21

the court will have no supplemental jurisdiction over his state law claims.  28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); accord Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

In the instant case, no trial date has been set and the parties have not yet commenced discovery.  These proceedings remain at the earliest screening stage for pro se and in forma pauperis complaints.  If plaintiff's Section 1983 claims are dismissed as recommended above, no possible basis for federal subject matter jurisdiction will then be apparent from the face of this complaint.  Accordingly, pursuant to Section 1367(c) and having balanced the relevant factors of judicial economy, convenience, fairness, and comity, the court should decline to exercise jurisdiction over Scott's state law claims and

dismiss them without prejudice for all purposes contemplated by 28 U.S.C. § 1367(d).
Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587 (5th Cir. 1992);
Newport Ltd. v. Sears, Roebuck & Co., 941 F.2d 302, 307 (5th Cir. 1991).

## THE PENDING MOTIONS

I.   PLAINTIFF'S MOTIONS FOR PROTECTIVE CUSTODY AND REMOVAL
     FROM WCI, RECORD DOC. NOS. 40, 46 (deferred portion)

Plaintiff's motion, Record Doc. No. 40, presents entirely new allegations concerning different incidents than those asserted in his complaint and names additional defendants who were not named in his complaint.  Scott's "Written Objections to Defendants' Memorandum in Opposition to Plaintiff's Motion and Order for Protective Custody and Removal from WCI," Record Doc. No. 52, includes still more new allegations and new defendants.

Construing plaintiff's motion as one for leave to amend his complaint, IT IS ORDERED that the motion is DENIED as futile.  Defendants assert in their opposition memorandum that plaintiff has failed to exhaust his administrative remedies concerning the allegations in his motion.  Scott admits in his written objections to defendants' memorandum that he has not pursued the prison Administrative Remedies Procedure ("ARP") with respect to these claims.  Record Doc. No. 52, at p.10, § IV.  Exhaustion of an available prison ARP is a requirement before filing suit.  Porter v. Nussle, 534 U.S.

23

516, 532 (2002) (citing the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as

amended, 42 U.S.C. § 1997(e)); Clifford v. Gibbs, 298 F.3d 328, 329 (5th Cir. 2002).

Title 42 U.S.C. § 1997(e)(a) now mandates exhaustion of administrative remedies,

stating that "no action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or

other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997(e)(a) (emphasis added).

Because Scott has conceded that he failed to exhaust the ARP concerning his new

claims, allowing the amendment would be futile, pursuant to the plain language of

Section 1997e(a).

To the extent that plaintiff's motions seek a transfer from WCI, the motions should

be denied because it fails to state a claim of a constitutional violation under Section 1983.

It is clear that a prisoner has no right of any kind springing from the Constitution itself

to be housed in any particular facility or to be transferred from one prison facility to

another, even if life in one prison may be much more disagreeable than in another.  Olim

v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-225

(1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Yates v. Stalder, 217 F.3d 332,

24

334 (5th Cir. 2000); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Biliski v. Harborth,

55 F.3d 160, 162 (5th Cir. 1995).

This claim is legally frivolous and plaintiff's motions should be denied.

II.   DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, RECORD DOC. NOS. 37 AND 57

If all of plaintiffs' claims are dismissed as legally frivolous, pursuant to my

recommendations above, defendants' motion to dismiss and plaintiff's motion for

summary judgment should be dismissed as moot.

## ORDER

**IT IS ORDERED** that plaintiff's Motion for Protective Custody and Removal

from WCI, Record Doc. No. 40, is **DENIED** to the extent it seeks to amend his

complaint.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint

under 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE,** either as legally

frivolous, for failure to state a claim on which relief may be granted 28 U.S.C.

§ 1915(e)(2), or under Heck.

**IT IS FURTHER RECOMMENDED** that all habeas corpus claims asserted in this Section 1983 complaint be **DISMISSED WITHOUT PREJUDICE** to plaintiff's ability to file a proper habeas corpus proceeding after exhaustion of state court remedies.

**IT IS FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that plaintiff's Motions for Protective Custody and Removal from WCI be **DENIED.**

**IT IS FURTHER RECOMMENDED** that defendants' motion to dismiss and plaintiff's motion for summary judgment be **DISMISSED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __29th__ day of August, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE